IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BRIGHTON TRUSTEES, LLC, *et al.*,
    Plaintiffs,

v.                                        Civil No. 3:20cv240 (DJN)

GENWORTH LIFE AND ANNUITY
INSURANCE COMPANY,
    Defendant.

**MEMORANDUM ORDER**
**(Denying Motions to Exclude)**

This matter comes before the Court on Defendant Genworth Life and Annuity Insurance Company's ("Defendant" or "Genworth") Motion to Exclude the Declaration of Robert Mills (ECF No. 57) and Motion to Exclude the Declaration of Howard Zail (ECF No. 64), moving the Court to exclude the expert declarations that Plaintiffs Brighton Trustees, LLC and Ronald Daubenmier (collectively, "Plaintiffs") have produced in support of their Motion for Class Certification (ECF No. 46). For the reasons stated below, Defendant's Motions (ECF Nos. 57, 64) are hereby DENIED.

                                             **I.    BACKGROUND**

    **A.**    **Plaintiffs' Allegations**

Plaintiffs seek to represent a class of similarly situated owners of Genworth life insurance policies. (Consolidated Complaint ("Compl.") ¶ 1 (ECF No. 26)). Plaintiffs allege that Genworth subjected certain policies to an unlawful and excessive cost of insurance ("COI Rate" or "monthly risk rate") increase, in violation of the insurance policies. (Compl. ¶ 1.) Specifically, Plaintiffs challenge the increases that applied to the following policies: GE Gold,

First Choice Gold, GE Gold II, First Choice Gold II and other universal life insurance policies. (Compl. ¶ 2.) First Colony Life Insurance Company ("First Colony"), which merged into Genworth in 2007[1], issued the policies at issue. The policies all follow a standardized policy form with terms that the insureds may not negotiate. (Compl. ¶ 29.)

On August 16, 2021, Plaintiffs moved for certification of the following class, which they call the COI Overcharge Class:

> All owners of universal life insurance policies issued, insured, or assumed by [Genworth], or its predecessors or successors, who have experienced a cost of insurance increase as of December 31, 2020, under the cost of insurance rate increase announced effective December 1, 2019, excluding owners whose policies issued outside the United States, owners whose policies issued in Alaska, Arkansas, New Mexico, and Washington, and [Genworth], its officers and directors, members of their immediate families, and their heirs, successors, or assigns.

(Mem. of Law in Supp. of Pls.' Mot. for Class Cert., for Appointment of Class Rep., and for Appointment of Lead Counsel ("Pls.' Mem.") at 3 (ECF No. 49).)

## B. Plaintiffs' Expert Declarations

In support of their Motion for Class Certification, Plaintiffs have produced expert testimony from Howard Zail, an actuary, regarding how Genworth determined its COI Rates. (Decl. of Howard Zail in Supp. of Class Cert. ("Zail Decl.") (ECF No. 49-4).) For each policy, the Net Amount at Risk ("NAR") represents the death benefit minus the policy value, thus constituting the insurer's exposure to risk in the event of death. (Zail Decl. ¶ 24.) Each policy requires that Genworth calculate the NAR the same mechanical way. (Zail Decl. ¶ 24.) Genworth, in turn, calculates the Cost of Insurance each month by multiplying the NAR by the monthly COI Rate. (Zail Decl. ¶ 26.)

---

[1] Because Genworth assumed the rights and responsibilities of the Gold policies, the Court will simply refer to Genworth when discussing issuance and changes to the policy, unless otherwise noted.

According to Zail, "Genworth had one set of COI Rates at pricing for both Gold and Gold II, and then . . . at redetermination, Genworth adopted a scale of updated COI Rates for all Gold policies and a scale for all Gold II policies. The conversion from monthly risk rates to COI Rates is done mechanically in Genworth's systems." (Zail Decl. ¶ 29.) Each policy states that "[t]he monthly risk rates for each coverage layer are based on the Insured's attained age and sex and the premium class for that coverage layer." (Zail Decl. ¶ 34.) Zail opines that "there are a common set of actuarial constraints that affect the increase in COI Rates, and the interpretation and implementation of these constraints can be achieved through the use of a common set of actuarial principles and practices." (Zail Decl. ¶ 60.)

For both Gold and Gold II products, Genworth used common assumptions, including (a) mortality, mortality improvement, mortality grade, mortality multiples for conversion, and substandard mortality methodology assumptions; (b) lapse assumptions; (c) expenses; (d) earned rate, crediting rate, and policy loan interest; and (e) taxes. (Zail Decl. ¶ 68.) Only the premium level assumptions and reserve calculation assumptions differed across the products. (Zail Decl. ¶ 69.) Zail opines that "Genworth adopted a common actuarial approach for both the algorithms used and the assumptions adopted in the redetermination process for each of the Gold and Gold II policies." (Zail Decl. ¶ 76.)

Ultimately, Zail opines that:

a. The Owners of record of the Class Policies are objectively identifiable from Genworth's business records;

b. The Class Policies all share the same or substantively identical contract provisions governing the determination of COI Rates;

c. The COI Increases for all Class Policies were subject to the same actuarial constraints for each product;

d. The COI Increases for all Class Policies were developed using the same general methodology and the same or similar actuarial cash flow projection models;

3

    e. The COI Increases had a common impact on all Class Policies in that they increased the COI Rates, and COI charges, on all Class Policies;

    f. Common evidence will establish, for all Class Policies, whether the COI Increases (a) were made in order to recoup past losses, or (b) were not properly based on Genworth's expectations as to future investment earnings, mortality, persistency, expenses and taxes (the "Required Factors");

    g. Common evidence will establish, for all Class Policies, whether the redetermination process adopted by Genworth leads to absurd results, charging of unwarranted excess amounts, unjustifiably overinflating possible losses, and ultimately resulting in redetermined COI Rates that were not based on the Required Factors and recouped past losses; and

    h. The same factual determinations will establish for all Class Policies within each product whether the COI Rate increases were applied uniformly across the groupings of policies as required by the policy contracts.

(Zail Decl. ¶ 13.)

Additionally, Plaintiffs submitted the report of their damages expert, Robert Mills, who calculated damages by comparing each class member' COI Rates before the COI increase with the class members' COI Rates after the increase. (Decl. of Robert Mills in Supp. of Mot. for Class Certification ("Mills Decl.") (ECF No. 49-5).)

## II. ANALYSIS

Defendant has moved to exclude the declarations of both Howard Zail and Robert Mills.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. According to that rule,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>     (b) the testimony is based on sufficient facts or data;
>
>     (c) the testimony is the product of reliable principles and methods; and

        (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 thus 'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (alterations in original) (citation omitted). First, to assess reliability, a court must conduct a "flexible" inquiry into the "principles and methodology" underlying an expert opinion. *Daubert*, 509 U.S. at 594-95. Rule 702 requires an opinion "ground[ed] in the methods and procedures" of the field that constitutes "more than a subjective belief or unsupported speculation." *Id.* at 590.

Second, under the relevance inquiry, an expert's opinion must have a valid "connection to the pertinent inquiry," *Daubert*, 509 U.S. at 592, which "helps 'the trier of fact to understand the evidence or to determine a fact in issue,'" *Sardis*, 10 F.4th at 281 (citation omitted). Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *Kumho Tire, Ltd. v. Carmichael,*, 526 U.S. 137, 152 (1999), and appellate courts will review their decisions on these issues only for abuse of discretion, *Sardis*, 10 F.4th at 280.

In analyzing Defendants' motions to exclude, the Court remains mindful that Plaintiffs submitted these declarations in support of their Motion for Class Certification. Accordingly, the Court will only consider the testimony of Plaintiffs' experts that it finds pertinent to the issue at hand — the Rule 23 analysis. To the extent that the reports contain testimony relevant to the merits of the case but not certification issues, the Court will simply ignore that irrelevant testimony. None of this testimony risks confusing the jury, as it will not reach the jury unless separately admitted at trial.

In its motion to exclude the declaration of Zail, Defendant argues that Zail improperly opines on legal issues relating to whether Genworth breached the policy provision at issue. (Def.'s Mem. in Supp. of its Mot. to Exclude the Decl. of Howard Zail ("Def.'s Zail Mem.") (ECF No. 66) at 6.) In fact, the majority of Defendant's attacks on Zail's testimony stem from Zail's discussion of the merits of the case. Accordingly, the Court finds this challenge to Zail's testimony premature. In conducting its certification analysis, the Court will not rely on any of Zail's testimony regarding the underlying actuarial practices and whether Genworth breached the contract. Only if and when Plaintiffs offer Zail's merits report will the Court conduct a *Daubert* analysis of his merits expert testimony. As for Zail's testimony regarding the merits, the Court will simply disregard any testimony not relevant to the issues at class certification.

With respect to Zail's testimony that the Court finds pertinent to issues at the class certification stage, Defendant takes issue with Zail's opinion that he can identify class policies through common evidence. (Def.'s Zail Mem. at 9.) Specifically, Defendant argues that Zail cannot identify class members who may benefit in the future from the COI Rate increase and, therefore, would not warrant inclusion in the class. However, this argument for exclusion relies on Defendant prevailing on this issue at the certification or merits stage. If the Court determines that the class may include members that may see a COI Rate decrease in the future, then Zail's testimony will inform the ascertainability question. In such an instance, the Court finds Zail's underlying methods of identifying the class members reliable. Should the Court determine that the class excludes class members who may experience a COI Rate decrease in the future, then the Court will ignore Zail's conclusion that he can identify the class policies at issue, as his underlying methods will lack reliability with respect to the question then posed. However, this does not warrant exclusion of his opinion entirely.

At the certification stage, the Court will rely on Zail's testimony for his demonstration that common evidence can identify the class members and that Genworth used common methods in redetermining the COI Rate. Defendant's challenge to Zail's testimony on the first issue may ultimately lack foundation, and Defendant does not challenge his testimony with respect to the common methods issue. Indeed, Defendant's own expert testimony confirms that Defendant used common methods in calculating the COI Rate. Therefore, the Court will deny Defendant's motion to exclude Zail's testimony.

Similarly, Defendant's attack on the testimony of Robert Mills, the damages expert, relies on Defendant's success on merits arguments and those that Defendant advances in opposition to certification. (Def.'s Mem. in Supp. of Mot. to Exclude the Decl. of Robert Mills ("Def.'s Mills. Mem.") (ECF No. 58).) Specifically, Defendant claims that Mills' damage analysis fails, because he uses the previous COI Rate as a baseline. (Def.'s Mills Mem. at 8-9.) However, Plaintiffs' claims do not require them to propose an alternate COI Rate change, as they claim that the change from the original COI Rate to the redetermined COI Rate breached the policy. Thus, the original COI Rate can form the baseline for the damages calculation. Should the Court ultimately determine that Plaintiffs must propose an alternate COI Rate, then Defendant can re-raise this issue if warranted. With respect to comparing the original COI Rate with the redetermined COI Rate to determine the amount of damages, the Court finds Mills' methods reliable.

Additionally, Defendant claims that Mills' model fails to account for months within the class period where a class member may have experienced a lower COI Rate. Again, however, Defendants prematurely raise this challenge. Whether any decrease should offset the damages constitutes a merits question for the Court to address at a later stage. And, should the Court rule

in Defendant's favor on this issue, Mills has demonstrated that he can calculate the amount of that offset. At the certification stage, the Court will rely on Mills' testimony and report in determining whether Plaintiffs can present a damages model that will prevent individual damages issues from predominating over common issues. Defendant's challenge to Mills' testimony does not warrant excluding the testimony for this purpose.

The Court will deny Defendant's motions to exclude, because the Court will only consider the expert declarations to the extent that they bear relevance to the issues at class certification. With respect to those relevant issues, the Court finds them reliable. To the extent that the expert reports do not bear relevance to certification issues, the Court will simply disregard those portions of the report. The Court's denial of Defendant's motions will not prejudice their ability to re-raise the motions with respect to the experts' merits testimony.

### III. CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendant's Motion to Exclude the Declaration of Robert Mills (ECF No. 57) and Motion to Exclude the Declaration of Howard Zail (ECF No. 64).

Let the Clerk file a copy of the Memorandum Order electronically and send a copy to all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 9, 2022

8