**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| BRIGHTON TRUSTEES, LLC, AS TRUSTEE, *et al.*, Plaintiffs, <br><br> v. <br><br> GENWORTH LIFE AND ANNUITY INSURANCE COMPANY, Defendant. | Civil No. 3:20cv240 (DJN) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ...............................................................................................5

    A.    The COI Increase .............................................................................5

    B.    The Litigation..................................................................................5

    C.    Settlement Negotiations ....................................................................6

    D.    The Settlement Agreement ................................................................7

        1.    Settlement Class..................................................................7

        2.    Consideration ....................................................................7

        3.    Release .............................................................................8

        4.    Costs and Fees....................................................................9

        5.    Notice ..............................................................................9

        6.    Distribution Plan ...............................................................10

III.    ARGUMENT ................................................................................................11

    A.    The Proposed Settlement Warrants Preliminary Approval under Rule 23(e)........11

        1.    Legal Standard Governing Preliminary Approval ....................................11

        2.    The Settlement is Procedurally Fair....................................................12

            a.    The Posture of the Proceedings..........................................12

            b.    The Extent of Discovery ................................................13

            c.    The Circumstances Surrounding the Settlement Negotiations ......14

            d.    The Experience of Class Counsel ......................................14

        3.    The Settlement is Substantively Fair, Reasonable, and Adequate............14

            a.    Relative Strength of Plaintiffs' Case and Strong Defenses ..........15

            b.    Duration and Expense of Further Litigation ................................16

            c.    Solvency and Recovery on Judgment............................16

i

        d.     The Amount of Settlement is Reasonable......................................17

    4.    The Rule 23(e)(2) Factors that Do Not Overlap with the Fourth Circuit's Adequacy Factors Support Preliminary Approval of the Settlement .........................................................................................17

        a.     Rule 23(e)(2)(A) - Class Representatives and Class Counsel Have Adequately Represented the Settlement Class. ...................17

        b.     Rule 23(e)(2)(C)(ii) and 23(e)(2)(C)(iii) - The Relief to be Provided to the Class is Adequate, Taking into Account the Effectiveness of Distributing Relief to the Settlement Class.........18

        c.     Rule 23(e)(2)(C)(iii) - The Relief to be Provided to the Class is Adequate, Taking into Account Any Proposed Award of Attorneys' Fees ...............................................................................19

        d.     Rule 23(e)(2)(D) - The Proposal Treats Class Members Equitably Relative to Each Other. ..................................................19

  B.    Certification of the Settlement Class is Appropriate. ...........................................20

    1.    The Settlement Class Satisfies the Requirements of Rule 23(a)...............21

        a.     Settlement Class Members Are Too Numerous to be Joined. .......21

        b.     There Are Common Questions of Law and Fact. ..........................21

        c.     Plaintiffs' Claims Are Typical of the Settlement Class. ...............22

        d.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.......................................................................23

    2.    The Settlement Class Meets the Requirements of Rule 23(b)(3). .............25

        a.     Common Legal and Factual Questions Predominate.....................25

        b.     A Class Action Is Superior to Other Methods of Asdjudication. ...............................................................................26

  C.    Notice to the Settlement Class Should Be Approved. ...........................................27

  D.    Proposed Schedule ................................................................................................29

IV.  CONCLUSION.....................................................................................................................29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.,*
  28 F.4th 513 (4th Cir. 2022) ............................................................ *passim*

*Advance Trust & Life Escrow Servs. v. Security Life of Denver Ins. Co.,*
  Case No. 18-cv-01897-DDD-NYW, ECF No. 148 ..............................................31

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)......................................................................26, 27

*Branch v. Gov't Emps. Ins. Co.,*
  323 F.R.D. 539 (E.D. Va. 2018) ............................................................24

*Brown v. Transurban USA, Inc.,*
  318 F.R.D. 560 (E.D. Va. 2016) ........................................................ *passim*

*Delter v. Microsoft Corp.,*
  436 F.3d 461 (4th Cir. 2006) ..............................................................25

*Dickman v. Banner Life Ins. Co.,*
  2020 WL 13094954 (D. Md. May 20, 2020).................................................2, 21

*DiFelice v. U.S. Airways, Inc.,*
  235 F.R.D. 70 (E.D. Va. 2006) .............................................................25

*Feller v. Transamerica Life Ins. Co.,*
  2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ................................................24

*Fleisher v. Phoenix Life Ins. Co.,*
  2013 WL 12224042 (S.D.N.Y. July 12, 2013) .........................................25, 26, 28

*Gould v. Alleco, Inc.,*
  883 F.2d 281 (4th Cir. 1989) ..............................................................12

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) .........................................................23, 26, 28

*Hanks v. Lincoln Life & Annuity Co. of N.Y.,*
  330 F.R.D. 374 (S.D.N.Y. 2019) ......................................................24, 27, 31

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................26

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ...............................................................12, 14, 17

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .....................................................12, 15, 16

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ............................................................15, 18, 25

*In re NeuStar Inc. Sec. Litig.*,
    2015 WL 5674798 (E.D. Va. Sept. 23, 2015)...............................................15, 16

*In re Vitamins Antitrust Litig.*,
    No. 99-cv-197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ...............................20

*Jones v. Fidelity Res., Inc.*,
    2020 WL 2112141 (D. Md. May 4, 2020)........................................................31

*Leonard v. John Hancock Life Ins. Co.*,
    Case No. 1:18-cv-4994-AKH, ECF No. 203 ....................................................31

*McAdams v. Robinson*,
    26 F.4th 149 (4th Cir. 2022) ...........................................................................31

*Robinson v. Carolina First Bank NA*,
    2019 WL 719031 (D.S.C. Feb. 14, 2019).....................................................8, 12

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019) ...........................................................................12

*Singleton v. Domino's Pizza, LLC*,
    976 F. Supp. 2d 665 (D. Md. 2013) ................................................................21

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015) .................................................................25, 28

*Stillmock v. Weis Markets, Inc.*,
    385 F. App'x 267 (4th Cir. 2010) ....................................................................29

*Talbott v. GC Servs. Ltd. P'ship*,
    191 F.R.D. 99 (W.D. Va. 2000).......................................................................29

*Thomas v. FTS USA, LLC*,
    312 F.R.D. 407 (E.D. Va. 2016) ......................................................................29

*TVPX ARS Inc. v. Genworth Life & Annuity Insurance Co.*,
    Case No. 3:18-cv-636-JAG...............................................................................9

*Vogt v. State Farm Life Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020) ................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................20

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ................................................26

*West v. Cont'l Auto., Inc.*,
    2018 WL 1146642 (W.D.N.C. Feb. 5, 2018) ......................12

*Williams v. Big Picture Loans, LLC*,
    2021 WL 3072462 (E.D. Va. 2021)....................................27

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ...............................11

**Rules**

Fed. R. Civ. P. 23 ......................................................... *passim*

**Other Authorities**

William B. Rubenstein, 1 *Newberg on Class Actions*, § 3:12 ................24, 30

Plaintiffs Brighton Trustees, LLC, on behalf of and as trustee for Diamond LS Trust; Bank of Utah, solely as securities intermediary for Diamond LS Trust; and Ronald L. Daubenmier (together, "Plaintiffs"), individually and on behalf of a class of policy owners proposed to be certified for purposes of settlement (the "Settlement Class" or "Class"), have entered into a settlement agreement (the "Settlement" or "Settlement Agreement") with Defendant Genworth Life and Annuity Insurance Company ("GLAIC").[1] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court for an order:

1. Certifying the Settlement Class, appointing Plaintiffs as Class representatives, and Susman Godfrey L.L.P. as Class Counsel.

2. Preliminarily approving the proposed Settlement, plan of allocation, and the form and manner of notice to the Settlement Class.

3. Directing notice to the Class under Rule 23(e)(1).

The Settlement, if approved, will conclude this class litigation in its entirety.

## I.   <u>INTRODUCTION</u>

After more than two years of vigorous litigation and months of arm's-length negotiations with an experienced mediator, Plaintiffs and GLAIC agreed to settle this complex insurance class action. The settlement provides the following monetary and non-monetary benefits to the class:

- **CASH**: A $25 million cash payment, reduced *pro rata* for any post-settlement opt outs. This is not a claims-made settlement; checks will be mailed directly to Class members who do not opt-out without requiring them to submit proofs of claim, using GLAIC's records. Settlement funds do not revert to GLAIC.

---

[1] Unless otherwise noted, all capitalized terms mean the same as in the Settlement Agreement, which is attached as Exhibit 2 to the Declaration of Steven Sklaver.

1

- **<u>CLASS COI RATE SCHEDULE INCREASE FREEZE</u>**. A total and complete freeze on any cost of insurance ("COI") increase for Class Policies for seven years. Thus, even if GLAIC has a future change in enumerated factors that would otherwise permit a COI rate increase under the terms of the Class Policies—including any cost factors that may have increased due to any surge in mortality due to the COVID-19 pandemic—GLAIC will not increase COI rates for seven years. Policyholders now have the ability to predict, with certainty, what their COI obligations will be for a substantial period of time.

- **<u>VALIDITY STIPULATION & STOLI WAIVER</u>**. As part of the Settlement, GLAIC has agreed not to challenge the validity and enforceability of any eligible policies owned by participating Class members on the grounds of lack of an insurable interest or misrepresentations in the application for such policies.

The cash portion of the Settlement Fund by itself represents a substantial recovery in relation to the total past overcharges at issue in this case, whether measured as the incremental COI charges using the methodology calculated in Plaintiff's damages expert report in support of Class Certification (ECF No. 49-5 at p. 16) (the "Incremental COI Deductions") or calculated using Defendants' measure.[2] Moreover, the non-cash portion of the Settlement adds meaningful additional value, which further enhances the value of the Settlement to the Class. *See* Declaration of Steven Sklaver ("Sklaver Decl.") ¶ 15. Overall, the Settlement is, at the very least, in line with other settlements in COI increase class actions to which courts have granted preliminary and final approval. *See, e.g.*, *Dickman v. Banner Life Ins. Co.,* 2020 WL 13094954, at \*4 (D. Md. May 20,

---

[2] Defendant has asserted that, even if Plaintiffs prevailed on liability, the Class is entitled to only a portion of the Incremental COI Deductions as damages. *See* ECF No. 67 at 26-28.

2020), *aff'd sub nom. 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.,* 28 F.4th 513 (4th Cir. 2022) ("*Banner COI*") (approving COI settlement with $19,862,566 cash fund and nonmonetary relief).

Indeed, earlier this year the Fourth Circuit affirmed the certification and final approval of a settlement in another COI case, stating:

> As the district court summarized at the preliminary approval hearing, "[t]he settlement was reached after an extensive motions practice, extensive discovery and investigation of Banner and William Penn policies by Plaintiffs' counsel and multiple settlement discussions and negotiations." At the final approval hearing, after considering the arguments of the [objector], the district court reiterated: "the settlement resulted from noncollusive arm's-length negotiations conducted in good faith by counsel. Collectively, co-lead counsel have over 55 years of experience in complex litigation and class actions." Paying particularly close attention to the protracted litigation preceding the settlement, the court noted that the "plaintiffs here litigated the claims against defendants, [through] motions practice, discovery, dispositive motions, and protracted mediation which was not successful." And "discovery, not even counting the discovery since February when I delayed my final approval of this settlement,  has included some 7,500 documents consisting of countless pages."
>
> The district court's analysis is functionally identical to previous cases in which we have upheld a class settlement approval as fair.

*Banner COI*, 28 F.4th at 525.

Class Counsel recommends this Settlement to the Court after substantial research and discovery into the merits of Plaintiffs' claims. Class Counsel discovered this alleged breach of contract on their own, without any governmental investigation, and filed the first suit alleging that GLAIC unlawfully increased cost of insurance rates. In discovery in this case, Class Counsel:

- Obtained and reviewed the production of more than 114,000 documents and data sets;

- Issued third-party subpoenas to 13 reinsurers, 3 actuarial consultants, and 1 auditor;

- Deposed 10 highly technical witnesses, including 6 current or former Genworth employees, two third-party actuarial consultants, Genworth's actuarial expert, and Genworth's corporate representative;

- Defended 4 depositions of Class Representatives and Plaintiffs' experts;

- Produced 8 expert reports, including nearly 500 pages of actuarial and damages analysis, and more than 2000 pages of exhibits;

- Served 23 interrogatories, 20 requests for production of documents, and 69 requests for admission;

- Responded to 36 interrogatories and 42 requests for production of documents; and

- Moved for class certification and successfully defended against two motions to exclude Plaintiffs' experts.

Sklaver Decl. ¶ 6.

The support of the Settlement's terms by Plaintiffs, Class Counsel, and the mediator is further testimony to the fairness of the Settlement. The parties engaged mediator Rodney Max for an in-person mediation while the parties were still briefing Plaintiffs' motion for class certification. *Id.* ¶ 13. Mr. Max is a distinguished fellow and past president of the American College of Civil Trial Mediators, and a highly qualified mediator. *See* Declaration of Rodney Max ("Max Decl.") ¶¶ 2-9. Although the Parties' initial session with Mr. Max did not result in settlement, the Parties worked with Mr. Max for several remote sessions, and reached a Settlement in March 2022 that provides a remarkable recovery for the Settlement Class, which Mr. Max has described as an "excellent result." *Id.* ¶ 21.

At the final approval hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to determine whether the Settlement is fair, reasonable, and adequate in light of all of the relevant factors. At this time, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that Class members can receive notice of the Settlement and the final approval hearing. This Settlement easily warrants preliminary approval because the Court will "likely be able" to approve the Settlement. Fed. R. Civ. P. 23(e)(1)(B).

## II.    BACKGROUND

### A.    The COI Increase

The Class consists of owners of over 14,900 universal life policies ("Class Policies") issued by First Colony Life Insurance Company, now GLAIC, between 1999 and 2007. Each Class Policy contains a section titled "Changes in Rates, Charges, and Fees," with limitations on when and how monthly risk rates used to calculate the monthly COI charges can be adjusted. Plaintiffs' policies, which are representative of the language included in all Class Policies, state in relevant part:

> The Company will base any change on its expectations as to future investment earnings, mortality, persistency, expenses and taxes. The Company will not make any change in order to recoup prior losses. Any change in the monthly risk rates will apply to all insured with the same combination of the following: attained age; number of years of insurance in force; net amount at risk; and premium class.

*See* Sklaver Decl., Ex. 3 at 14. In 2019 and 2020, GLAIC adjusted COI rates on the Class Policies.

### B.    The Litigation

In April 2020, Plaintiffs filed a putative class action lawsuit, asserting a breach of contract claim against GLAIC. ECF No. 1. The parties engaged in fact discovery and then expert discovery. *See id.* ¶¶ 6-11. Plaintiffs designated two expert witnesses: actuarial expert Howard Zail and damages expert Robert Mills. *See id.* GLAIC also designated two experts: Lisa Kuklinski and Professor Craig Merrill, both for actuarial issues. *See id.* The parties collectively produced 11 expert reports and took and defended three expert depositions. *See id.*

In August 2021, Plaintiffs moved for class certification. ECF No. 49. Plaintiffs' certification motion included three declarations from Class Representatives, two expert reports, and more than thirty exhibits. Sklaver Decl. ¶ 8. GLAIC opposed certification, and Plaintiffs filed a reply. ECF No. 68, 100. At the same time, GLAIC moved to exclude Plaintiffs' experts in support of class certification, and the parties fully briefed those motions as well. Sklaver Decl. ¶ 9.

The Court subsequently denied GLAIC's motions to exclude. ECF No. 109. It also convened a conference call with the parties on February 14, 2022 to discuss class certification. *See* Sklaver Decl., Ex. 5. On the call, the Court indicated it had reviewed the extensive briefing and was inclined to certify the class, "unless something completely unusual happens" at the forthcoming certification hearing*. Id.* at 4:17-22. Without prohibiting the parties from filing dispositive motions or pre-judging the issues, the Court further opined that summary judgment would be "a waste of time in this case," given the genuine disputes of material fact made plain in the expert declarations related to class certification. *Id.* at 4:23-25.  The parties were able to reach a settlement favorable to the Class only after Plaintiffs prevailed on the *Daubert* motions, and the Court indicated Plaintiffs were likely to prevail on class certification and summary judgment.

### C.    Settlement Negotiations

The Settlement is the result of extensive, arms-length negotiations between the parties with the assistance of an experienced mediator, Rodney Max. *See* Sklaver Decl. ¶¶ 13-14; Max Decl. ¶¶ 12-21. Through the life of the case, the parties exchanged numerous settlement offers and counter-offers and have engaged in several separate unsuccessful mediations. Following the February 14, 2022 telephone conference with the Court, the parties reopened the settlement dialogue and scheduled additional mediations with Mr. Max, which took place on March 12, 2022, and March 25, 2022 by Zoom. The parties reached an agreement in principle after the last remote session. The parties informed the Court about the development, and the Court convened a telephone conference to discuss the schedule for preliminary approval. *See* ECF No. 126.

After the parties agreed to a settlement in principle, GLAIC produced updated COI data and actuarial modeling from its administrative systems. Plaintiffs reviewed the updated data and

complex modeling with their experts and confirmed their intent to proceed with the Settlement. A long-form settlement agreement was heavily negotiated and agreed to on May 6, 2022.

Throughout the process, the Settlement negotiations were conducted by highly qualified and experienced counsel on both sides. Sklaver Decl. ¶¶ 13-14; Max Decl. ¶¶ 12-21. The mediator, Mr. Max, declares that the proposed Settlement is fair and reasonable, and is "an excellent result" for members of the proposed Class. *See* Max. Decl. ¶ 21. Class Counsel analyzed all the contested legal and factual issues to thoroughly evaluate GLAIC's contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and made fair and reasonable settlement demands of GLAIC. *Id.*

### D.   The Settlement Agreement

#### 1.   Settlement Class

The Settlement defines the Settlement Class as:

> All owners of Gold and Gold II universal life insurance policies issued, insured, or assumed by GLAIC, or its predecessors or successors, whose COI Rate Scales were changed as a result of the 2019 COI Rate Adjustment. Specifically excluded from the class are Class Counsel and their employees, GLAIC, its officers and directors and their immediate family members; the Court, the Court's staff, and their immediate family members; and the heirs, successors or assigns of any of the foregoing. Also excluded from the Class are owners of Gold and Gold II policies that have terminated as a result of the death of the insured on or before March 31, 2022, where the 2019 COI Rate Adjustment did not result in an Incremental COI Deduction before the death of the insured. For purposes of clarification only, the Class also does not include any policies issued by or insured by Genworth Life Insurance Company or its predecessors or successors.

#### 2.   Consideration

The Settlement awards both cash relief and non-cash relief to the Settlement Class. With respect to the cash relief, a $25 million Settlement Fund will be funded for the benefit of the Settlement Class. *See* Sklaver Decl., Ex. 2 ¶ 2. This amount will be reduced, on a *pro-rata* basis, by an amount that is calculated by multiplying the amount of the Settlement Fund (*i.e.*,

$25,000,000) by a fraction where (i) the numerator is the combined Specified Amount, as of March 31, 2022 (as that term is defined in the Policies) of the Policies that opt out of the Settlement Class and (ii) the denominator is the total Specified Amount, as of March 31, 2022, of all Policies owned by members of the Class. *Id.* ¶ 2. By way of example, if 1% of the total Specified Amount of all Policies owned by members of the Class are attributable to Opt-Outs, the Settlement Fund will be reduced by 1%. *Id.* No portion of the Final Settlement Fund (*i.e.*, the post-reduction amount) will revert to GLAIC. *Id.* ¶ 66. Checks will be sent automatically to Class members using GLAIC's database of their addresses without requiring Class members to submit claim forms. The Settlement Administrator will also conduct individual address searches, using their own databases and other sources, to confirm the address for owners of terminated policies. Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl.") ¶ 29.

The Settlement Agreement also provides two forms of significant non-cash relief. *First*, for a period of seven years after the date on which the Court approves the Settlement, "GLAIC agrees that COI rates on the Class Policies will not be increased above the COI Rate Scales adopted under the 2019 Adjustment." *See* Sklaver Decl, Ex. 2 ¶ 7. *Second*, "GLAIC agrees to not take any legal action (including asserting as an affirmative defense or counterclaim), or cause to take any legal action, that seeks to void, rescind, cancel, have declared void, or seeks to deny coverage under or deny a death claim for any Class Policy based on: (1) an alleged lack of valid insurable interest under any applicable law or equitable principles; or (2) any misrepresentation allegedly made on or related to the application for, or otherwise made in apply for the policy." *Id.* ¶ 9.

### 3.   Release

Once the settlement becomes final, the Settlement Class and certain related parties (referred to as the "Releasing Parties" in the Settlement Agreement) will release GLAIC and certain related parties (referred to as the "Released Parties" in the Settlement Agreement) from "all Claims

asserted in the Action or arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged or could have been alleged in the Action related to the 2019 COI Rate Adjustment." Sklaver Decl., Ex. 2, ¶ 80. The Settlement Class will not release "(i) new claims that could not have been asserted in the Action because they are based upon a future COI Rate Scale increase that occurs after March 25, 2022 ("New COI Increase Claims"), (ii) claims relating to the COI Rate Scale increases imposed by Genworth Life Insurance Company,[3] on Gold and Gold II policies issued, insured, and/or assumed by it, and (iii) claims at issue" in *TVPX ARS Inc. v. Genworth Life & Annuity Insurance Co.*, Case No. 3:18-cv-636-JAG (E.D.V.A.) and Case No. 00-CV-217 (CDL) (M.D. Ga.), appeal filed, 22-11185-A (11th Cir.) (collectively, the "TVPX Action"). *Id.* ¶¶ 28, 62.

### 4. Costs and Fees

The Settlement provides an incentive award of up to $25,000 for each Class Representative for their services on behalf of the Settlement Class. *See* Sklaver Decl., Ex. 2 ¶ 16. The Settlement Agreement also provides for attorneys' fees in an amount not to exceed 33 1/3% of the Final Settlement Fund, as well as reimbursement for all expenses incurred or to be incurred. *Id.* ¶ 17. These amounts, if approved, would be paid out of the Final Settlement Fund. *Id.* ¶¶ 16-17.

Class Counsel will file a motion seeking reimbursement of their costs, fees, and incentive awards, which will be proposed to be scheduled to be heard at the same time as the final approval hearing. Class members will be given an opportunity to object to that application prior to the final approval hearing. No such costs, fees, or awards will be distributed without Court order.

### 5. Notice

Plaintiff requests the appointment of JND as the Settlement Administrator. The proposed

---

[3] Genworth Life Insurance Company (GLIC) is a different corporation than the defendant here, Genworth Life and Annuity Insurance Company (GLAIC).

notice plan is described in paragraphs 21-25 of the Sklaver Declaration and paragraphs 27-35 of the Declaration of Gina Intrepido-Bowden. The declarations confirm that GLAIC provided owner-address information to JND on April 26, 2022. Sklaver Decl. ¶ 22. Within 14 days after the motion for preliminary approval is granted (the "Notice Date"), JND will mail the short-form notice attached as Exhibit B to the Intrepido-Bowden Declaration to all addresses on the list from GLAIC.[4] *See* Intrepido-Bowden Decl. ¶ 27. JND will also post a copy of the long-form notice attached as Exhibit C to the Intrepido-Bowden Declaration to a class action website. *See* Intrepido-Bowden Decl. ¶¶ 30-31. Class Members who wish to be excluded from the Settlement Class must send a letter to JND requesting exclusion that is postmarked no later than 45 days after the Notice Date. Sklaver Decl., Ex. 2 ¶ 74.

Within 10 days after the filing of this motion, GLAIC shall serve notices of the proposed Settlement upon the appropriate officials in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Sklaver Decl., Ex. 2 ¶ 15.

### 6. Distribution Plan

The proposed plan of allocation, as set forth in Exhibit 6 to the Sklaver Declaration, distributes proceeds directly to Class Members on a *pro-rata* basis after a minimum settlement payment is made to all Class Members, without the need for a claim form.

Each Class Member's *pro-rata* share is calculated by multiplying (a) the percentage of Incremental COI Deductions attributable to that Class Member's policy as of March 31, 2022,[5] by

---

[4] JND will re-mail any short-form notices returned by the U.S. Postal Service with a forwarding address. *See* Intrepido-Bowden Decl. ¶ 28.

[5] The methodology for calculating Incremental COI Deductions is described in the Expert Report of Robert Mills. ECF No. 49-5. In that report, Mr. Mills determines the COI overcharges for a Policy as the difference between the COI charges actually assessed on the Policy since December 1, 2019 and the COI charges that would have been deducted from the Policy but-for the 2019 COI Increase. Mr. Mills will update these calculations through March 31, 2022, using the recently produced data.

10

(b) the Net Settlement Fund after deducting all minimum relief payments. *See* Sklaver Decl., Ex. 6. All in-force policies will also benefit from the guarantee of policy validity and the seven-year COI freeze.

Class members will not need to fill out claim forms. Money will be sent to them automatically in the mail, using the addresses that GLAIC maintains on file. Within one year plus 30 days after the date the Settlement Administrator mails the proceeds, to the extent feasible and practical in light of the costs of administering such subsequent payments, any funds remaining in the Settlement Fund shall be re-distributed on a *pro-rata* basis to Class Members who previously cashed their checks, unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair. Sklaver Decl., Ex. 6 ¶ 5.

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval under Rule 23(e)

#### 1.   Legal Standard Governing Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement. *See* Fed. R. Civ. P. 23(e)(2). "[T]he district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *Banner COI*, 28 F.4th at 521 (quoting *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019)). In the Fourth Circuit, "[t]here is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to a protracted litigation." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) and *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001)). Settlement is particularly favored "in the class action context." *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-

FDW-DSC, 2018 WL 1146642, at *3 (W.D.N.C. Feb. 5, 2018).

At the preliminary approval stage, the "parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class" and the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(2).

In the Fourth Circuit, district judges use four factors for determining a class settlement's "fairness," which are: "(1) the posture of the class at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of the class action litigation." *Banner COI*, 28 F.4th at 525. The Fourth Circuit uses five factors to determine a class settlement's "adequacy": "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* at 526.

### 2.     The Settlement is Procedurally Fair

The Fourth Circuit's fairness analysis is intended to confirm that a settlement was fair and "reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59. This is consistent with the Rule 23(e)(2)(A)-(B) considerations of the adequacy of the representation of the class and whether the settlement was negotiated at arm's length. Each of the fairness factors weighs in favor of a preliminary finding that the Settlement is fair.

### a.     The Posture of the Proceedings

"Considering the posture of the case at the time of settlement allows the Court to determine

12

whether the case has progressed far enough to dispel any wariness of possible collusion among the settling parties." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016) (citation and internal quotation marks omitted).

This Action has undoubtedly progressed far enough to dispel any notion of collusion among the parties. Fact discovery in this case concluded on December 17, 2021, and Plaintiffs filed a motion for class certification that GLAIC vigorously contested, including by filing motions to exclude Plaintiffs' expert reports and testimony. *See* ECF Nos. 46-52, 57, 64, 67-68, 79-82, 95-96, 100-101. At the time the parties reached a settlement, GLAIC had also filed a motion for summary judgment that challenged Plaintiffs' interpretation of Class policies. ECF No. 118. Because the parties had already discussed substantially all their arguments as to class certification and the merits of the case, and completed all fact discovery, the posture of this Action at the time of Settlement weighs strongly in favor of preliminary approval.

b.    The Extent of Discovery

This factor "enables the Court to ensure that the case is well-enough developed for Class Counsel and . . . Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into th[e] Settlement." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). "[S]ignificant discovery, . . . [that] clarifie[s] plaintiffs' previous understanding of the strength and weakness of their claims and afford[s] the ability to confirm the fairness, reasonableness, and adequacy of the proposed . . . settlement" will suffice. *MicroStrategy*, 148 F. Supp. 2d at 664 (footnote omitted).

Here, fact discovery closed on December 17, 2021. Class Counsel conducted a thorough investigation of the merits of their claims, including by deposing GLAIC's 30(b)(6) representative, six current and former GLAIC employees, and two third-party consultants, and taking and defending expert depositions. *See* Sklaver Decl., ¶¶ 6-7. Class Counsel also sought third-party

13

discovery from GLAIC's reinsurers and consultants. *Id.* Given the extent of discovery, this factor weighs in favor of preliminary approval.

### c.     The Circumstances Surrounding the Settlement Negotiations

This factor assesses whether the Settlement is the product of adversarial, arm's-length negotiations. *See Microstrategy*, 148 F. Supp. 2d at 665. Use of a professional mediator evidences an arm's-length negotiation and weighs in favor of preliminary approval. *See, e.g.*, *Brown*, 318 F.R.D. at 571-72; *NeuStar*, 2015 WL 5674798, at *11. Engaging in "numerous meetings and extensive and intensive discussions" also supports a finding that a settlement was negotiated at arm's length. *Microstrategy*, 148 F. Supp. 2d at 665. Both occurred here.

The parties engaged Mr. Max in July 2021 for an in-person mediation session in Miami on November 18, 2021. *See* Max Decl. ¶¶ 10-11. The parties filed mediation statements, along with exhibits, and participated in several discussions in the months after the mediation. Two additional mediation sessions took place after the completion of discovery. All this makes the circumstances surrounding the Settlement negotiations weigh in favor of preliminary approval.

### d.     The Experience of Class Counsel

This factor looks to the experience of Class Counsel to determine whether they have the experience and ability to effectively represent the Class's interests. *Microstrategy*, 148 F. Supp. 2d at 665. Susman Godfrey LLP has significant experience in prosecuting cost of insurance class actions, which makes the firm particularly well-suited to serve as Class Counsel. Sklaver Decl. ¶ 2; Ex. 1. The Court already found that Susman Godfrey was adequate to act on behalf of the putative class until the Court determined whether to certify the action as a class action. ECF No. 21 at 3. Accordingly, the experience of Class Counsel weighs in favor of preliminary approval.

### 3.     The Settlement is Substantively Fair, Reasonable, and Adequate

Each of the adequacy factors weighs in favor of a finding that the Settlement if fair,

reasonable, and adequate.[6]

a.    <u>Relative Strength of Plaintiffs' Case and Strong Defenses</u>

"The first and second factors addressing the adequacy of a settlement require the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Brown*, 318 F.R.D. at 573 (internal quotation marks omitted). Although Plaintiffs believe they have a strong case on the merits, Defendants have challenged the merits of Plaintiffs' claims. For example, in GLAIC's motion for summary judgment, GLAIC disputed that it had increased COI rates "in order to" recoup prior losses and argued that Plaintiffs' theories of breach "rely on alleged actuarial meanings or attempts to enforce constraints that are not in the subject policies." ECF No. 119.

GLAIC has also mounted challenges to Plaintiffs' damages model, arguing that, even if Plaintiffs prevail on liability, only a portion of the Incremental COI Deductions are properly awardable on damages. *See* ECF No. 67 at 26-28. Indeed, GLAIC even moved to strike Plaintiffs' expert reports in support of class certification on the grounds that Plaintiffs had not quantified the portion of the overcharges that were directly attributable to each alleged breach. *See* ECF No. 58 at 8-10. Although the Court denied those motions to strike, it concluded that GLAIC had raised this challenge "prematurely" and opined that "whether any decrease should offset the damages constitutes a merits question for the Court to address at a later stage." ECF No. 109 at 7.

Although Plaintiffs prevailed thus far in the face of challenges to class certification and motions to exclude, the Court has not yet evaluated the merits of Plaintiffs' case. The challenges

---

[6] One of the adequacy factors, "the degree of opposition to the settlement," 927 F.2d at 159, is premature at this stage because the Settlement Class has not yet received Notice of the Settlement. As Notice will be provided to Settlement Class members, with instructions for the communication of any objections to the Settlement after the Court grants preliminary approval, this factor will be a consideration at the Final Approval Hearing.

that Plaintiffs expect to face at summary judgment, trial, and in further appeals creates uncertainty and risks that weigh in favor of preliminary approval.

b.   Duration and Expense of Further Litigation

The third adequacy factor asks the Court to "weigh the settlement in consideration of the substantial time and expense litigation of this sort would entail if a settlement was not reached." *Mills*, 265 F.R.D. at 256. This factor is based on a sound policy of conserving the resources of the Court and the certainty that unnecessary and unwarranted expenditure of resources and time benefit[s] all parties." *Id.* The complexity of this Action to date suggests that further litigation would be lengthy and costly. *See id.* at 256-57; *Brown*, 318 F.R.D. at 573.

This Action has been complex, as attested by the long history of the litigation, data reviewed, actuarial science and economics employed, and the sheer size of and methodology used in plaintiffs' motion for class certification and supporting documentation. The Settlement ends future litigation and uncertainty. The parties agreed to the Settlement before the Court certified the class and only weeks before Plaintiffs were scheduled to file an opposition to Defendants' motion for summary judgment. Even if Plaintiffs had successfully certified the Class and opposed summary judgment, the Class could still have faced a motion to decertify, various *Daubert* motions, trial, and post-verdict and appellate litigation. Even assuming the Class would clear all these hurdles, it could easily be several years or more before the Class saw a dollar of relief. This factor therefore weighs in favor of preliminary approval.

c.   Solvency and Recovery on Judgment

GLAIC's solvency is not at issue here. However, because GLAIC's financial position could change in the future (e.g., its parent's stock price is currently trading at about $4 per share) and Settlement puts an end to this risk, this factor favors preliminary approval, or at least is neutral.

d.      The Amount of Settlement is Reasonable

Although the Fourth Circuit does not have "enumerated factors for assessing a settlement's reasonableness, we have suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Banner COI*, 28 F.4th at 527. "To the extent reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, we think it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* The size of the Settlement Fund here is substantial in relation to the total past overcharges at issue in this case, whether measured as the incremental COI charges calculated in Plaintiff's damages expert report in support of Class Certification, *see* ECF No. 49-5 at 16 (calculating damages through December 2020), or using Defendants' measure, *see* ECF No. 67 at 26-28. The Settlement Agreement also includes significant non-cash relief. *See* Sklaver Decl., Ex. 2 ¶ 7. The size of the Settlement Fund is appropriate for the scale of this complex litigation, which has been hard-fought for years.

**4.      The Rule 23(e)(2) Factors that Do Not Overlap with the Fourth Circuit's Adequacy Factors Support Preliminary Approval of the Settlement[7]**

a.      Rule 23(e)(2)(A) - Class Representatives and Class Counsel Have Adequately Represented the Settlement Class.

Plaintiffs each share the same interest as the Settlement Class in prosecuting this Action to ensure the greatest possible recovery from Defendants. Plaintiffs are part of the Settlement Class and suffered the same injuries as other Settlement Class Members: monetary losses associated with

---

[7] The Rule 23(e)(2)(B) factor ("the proposal was negotiated at arm's length") is addressed above in the discussion of the fairness factors. The Rule 23(e)(2)(C)(i) factor ("the costs, risks, and delay of trial and appeal") is addressed above in the discussion of the adequacy factors. The Settlement Agreement identifies all agreements made in connection with the proposed settlement in compliance with Rule 23(e)(2)(C)(iv).

COI overcharges. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members) (citation and internal quotation marks omitted). Further, Class Counsel have demonstrated that they are qualified, experienced, and able to conduct the litigation and supervise the Settlement. The Rule 23(e)(2)(A) factor supports preliminary approval of the Settlement.

b.    <u>Rule 23(e)(2)(C)(ii) and 23(e)(2)(C)(iii) - The Relief to be</u>
<u>Provided to the Class is Adequate, Taking into Account the</u>
<u>Effectiveness of Distributing Relief to the Settlement Class</u>

As part of the adequacy analysis, Rule 23(e)(2)(C)(ii) requires the Court to look to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The proposed "claims processing method should deter or defeat unjustified claims," but should not be "unduly demanding" on potential claimants. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2).

A proposed plan of allocation, such as here, where funds are automatically distributed to class members on a *pro-rata* basis without a claims process, has frequently been determined to be fair, adequate, and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000). Funds will be mailed to Class Members using GLAIC's database of Class member addresses. Sklaver Decl., Ex. 6. Because GLAIC maintains information about each Settlement Class Member, including historical COI charges, and each insured's contact information, Settlement Class Members need not submit claims or provide supporting documentation to receive a cash award. *See* Sklaver Decl. ¶ 22. The Settlement Administrator will investigate the addresses for any notice that is returned or undeliverable. No funds will revert to GLAIC. Sklaver Decl. ¶ 20. Class Counsel, having consulted with the Settlement Administrator, JND Legal Administration, respectfully submits that the proposed plan of distribution is the most fair, reasonable, and adequate method of equitably allocating the Settlement Fund to the Settlement

Class.

        c.        <u>Rule 23(e)(2)(C)(iii) - The Relief to be Provided to the Class is</u>
                <u>Adequate, Taking into Account Any Proposed Award of</u>
                <u>Attorneys' Fees</u>

Rule 23(e)(2)(C)(iii) requires that the Court, as part of its overall analysis of the adequacy of the Settlement, consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the terms of the Settlement Agreement and as described in the proposed Notice to be provided to Settlement Class Members, Class Counsel will apply for an award of attorneys' fees not to exceed 33 1/3 percent of the Settlement Fund, in addition to reimbursement for all expenses incurred or to be incurred. The percentage of the settlement fund is within the range of reasonable awards established by the Court. *See, e.g.*, *Dickman v. Banner Life Ins. Co.*, Case No. 1:16-cv-00192-RDB, 2020 WL 13094954, at *5 (D. Md. May 20, 2020) (approving fee award equal to 39.5% of the common settlement fund after reduction of opt outs and 20.6% of the total value of the relief obtained for the class), *aff'd Banner COI*, 28 F.4th 513 (4th Cir. 2022); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 685 (D. Md. 2013) (describing a range of awards between 15 and 40 percent of the settlement fund that have been deemed fair and reasonable by courts within the Fourth Circuit). As provided in the Settlement Agreement, the amount of attorneys' fees awarded may be paid upon entry of an order approving such fees. *See* Sklaver Decl., Ex. 2 ¶ 17.

        d.        <u>Rule 23(e)(2)(D) - The Proposal Treats Class Members Equitably</u>
                <u>Relative to Each Other.</u>

The Rule 23(e)(2)(D) factor addresses whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The proposed distribution of the Settlement Fund treats Settlement Class members equitably because each Class member will receive a *pro-rata* share of the Settlement Fund depending on the amount that the Class Member

was overcharged, with a minimum floor payment assured. Sklaver Decl., Ex. 6 ¶ 2. Similarly, the

Releases treat all Settlement Class Members equitably relative to one another because, subject to

Court approval, all Settlement Class Members will be giving GLAIC identical releases tied to the

theory of liability asserted in this Action and no individual who does not receive a cash award will

be providing any release of individual claims.

### B.  Certification of the Settlement Class is Appropriate.

Rule 23(e) requires that the Parties demonstrate that this Court "will likely be able to . . .

certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The

standard for class certification for settlement purposes is less stringent than for litigation purposes.

*See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(1). As the Fourth Circuit recently

observed in another COI case:

> Because a district court possesses greater familiarity and expertise than a court of
> appeals in managing the practical problems of a class action, its certification
> decision is entitled to substantial deference, especially when the court makes well-
> supported factual findings supporting its decision. This case, chock-full of the most
> esoteric principles of life insurance accounting imaginable, could be the poster
> child for that rule.

*Banner COI*, 28 F.4th at 524 (internal citations omitted). There, the Fourth Circuit affirmed the

settlement class certification of a COI breach of contract class, where the district court explained

that the class included "policyholders whose standardized form policy included a uniform

contractual provision that was allegedly breached by Defendants' common course of conduct in

increasing these COI rates." *Id.* at 522.

Certification of a settlement class requires that the proposed class satisfy the requirements

of Federal Rule of Civil Procedure 23. *Id.* at 521. "First, the class must comply with the four

prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and

legal issues; (2) typicality of claims and defenses of class representatives; and (4) adequacy of

representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). "Second, the class action must fall within one of the three categories enumerated in Rule 23(b)." *Id.* (citing Fed. R. Civ. P. 23(b)). Here, Plaintiffs assert that the requirements of Rules 23(a) and 23(b) are met, and GLAIC does not oppose certification (for settlement purposes only) of the Settlement Class under Rule 23(a) and Rule 23(b)(3), "which requires that common issues predominate over individual ones and that a class action be superior to other available methods of adjudication." *Id.*

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a).

#### a.    Settlement Class Members Are Too Numerous to be Joined.

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action." *Branch v. Gov't Employees Ins. Co.*, 323 F.R.D. 539, 546 (E.D. Va. 2018) (finding a class of 400 to be sufficiently numerous); William B. Rubenstein, 1 *Newberg on Class Actions*, § 3:12 (generally a class of more than 40 satisfies the numerosity requirement) (5th ed. 2018). Here, according to the insured data provided by GLAIC, there are 14,900 Settlement Class Members geographically dispersed throughout the country. *See* Intrepido-Bowden Decl. ¶ 38. Joinder is therefore impracticable and Rule 23(a)(1) is satisfied.

#### b.    There Are Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In a Rule 23(b)(3) class action like this one, the 'commonality' requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Banner COI*, 28 F.4th at 522 (internal citations omitted).

This Action presents numerous common questions of both law and fact that can be resolved on a classwide basis. As in other certified COI class actions, application of these form contracts— e.g., whether the increase "recoup[ed] prior losses," and was properly based on "expectations as to future investment earnings, mortality, persistency, expenses and taxes"—will resolve common questions central to resolution of the case. *See Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 382 (S.D.N.Y. 2019) ("*Voya COI*") (commonality satisfied where "claims of the proposed class turn on common contentions of what factors VOYA"); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *6 (C.D. Cal. Dec. 11, 2017) ("Given that courts have recognized that the law relating to the elements of a claim for breach of contract do not vary greatly from state to state, the issue of breach . . . is also common to all prospective class members."); *Fleisher v. Phoenix Life Ins. Co.*, Case No. 11-civ-8405, 2013 WL 12224042, at *3 (S.D.N.Y. 2013) (common questions included whether "the basis for the [COI] increase was unsupported by an enumerated factor in the contract" and whether "the increase was applied discriminatorily rather than, as the contract requires, to all insureds in the same class").

### c.     Plaintiffs' Claims Are Typical of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "As to typicality, the commonality and typicality requirements of Rule 23(a) tend to merge[.]" *Banner COI*, 28 F.4th at 523 (internal citations omitted). Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Delter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *see also Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 208 (E.D. Va. 2015) (typicality focuses "on the general similarity of the named representative's legal and remedial theories to those of the proposed class."). It is not necessary to show that the movant be identically situated to other Class members to meet the typicality standard.

22

*Mills.*, 257 F.R.D. at 105. "To the extent members of the class, including the class representative, have interests . . . that are slightly divergent with each other, . . . the slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006).

Plaintiffs are members of the Settlement Class and possess the same interests and suffered the same alleged injury as each Settlement Class Member through GLAIC's uniform course of conduct. Plaintiffs, like all Settlement Class Members, were subjected to the increase in violation of their policies' terms and share a common interest in holding GLAIC liable for these overcharges. *See Vogt v. State Farm Life Ins. Co.* ("*State Farm COI*"), 963 F.3d 753, 767 (8th Cir. 2020) (rejecting typicality challenge in COI litigation and opining that courts have "rejected challenges to the class representatives' adequacy that were based . . . on different class members desiring different methods of calculating damages." (citations omitted)); *Phoenix COI*, 2013 WL 12224042, at *11 ("[T]he claim of the named plaintiff (Fleisher) is also typical, in that all members of the class were allegedly subjected to a COI increase in violation of the terms of their policies."). Thus, typicality is satisfied.

d.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class," and Rule 23(g)(4) requires that "class counsel [will] fairly and adequately represent the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves in part to uncover conflicts of interest between named parties and the class they seek to represent." *Banner COI*, 28 F.4th at 523-24 (quoting in part *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). As to Class Counsel, the adequacy inquiry assesses whether class counsel is conflicted and whether class counsel has conflicts. *Id.* at 524. A conflict of interest "will not defeat the

23

adequacy requirement if it is 'merely speculative or hypothetical.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (quoting *Gunnells*, 348 F.3d at 430).

Here, Plaintiffs and the Settlement Class share the same legal claims under the same set of core facts. Plaintiffs' interests are directly aligned with Settlement Class Members—to maximize the amount recovered from GLAIC for its alleged breach of contract. Proceeds will be distributed equitably on a pro rata basis with a minimum floor payment assured, and all Settlement Class Members share an overriding interest in obtaining the largest monetary recovery possible from GLAIC. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."). Moreover, since filing this action, Plaintiffs have taken their role and obligations to the Class seriously, actively participating and monitoring the litigation, including by submitting to depositions. For these reasons, Plaintiffs have claims that are typical and adequate for the Settlement Class, and should be appointed as representatives of the Settlement Class.

Susman Godfrey LLP has vigorously prosecuted this Action on behalf of the Class for over two years. Moreover, the lawyers at Susman Godfrey are experienced attorneys with qualifications and resources to administer this settlement, and they have been found adequate class counsel in *Reliastar COI*, *North American COI*, *Voya COI, AXA COI, Phoenix COI, SLD COI,* and numerous other cases.[8] The Court already found that Susman Godfrey was adequate to prosecute Plaintiffs' claims in appointing it as interim class counsel. ECF No. 21. Thus, the Court should find that Susman Godfrey satisfies Rule 23(g).

---

[8] Sklaver Decl., Ex. 1 (Susman Godfrey Firm Resume).

## 2. The Settlement Class Meets the Requirements of Rule 23(b)(3).

Certification of a class for settlement purposes requires a showing that "questions of law or fact predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Manageability is not at issue for a settlement class. *Amchem Prods.*, 521 U.S. at 615.

### a. Common Legal and Factual Questions Predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "The predominance inquiry is fundamentally qualitative." *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2021 WL 3072462, at *9 (E.D. Va. 2021) (citing *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 429 (4th Cir. 2003)). "In other words, Rule 23(b)(3) compares the quality of the common questions to those of the noncommon questions." *Soutter*, 307 F.R.D. at 214. "If the qualitatively overarching issue in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Id.*

In COI litigation, courts routinely find that common issues predominate when an insurer, like GLAIC, uses a common method to raise rates on Class members in breach of the same form contract provisions. The Fourth Circuit recently affirmed the district court's ruling on settlement class certification in *Banner COI,* quoting the district court's observation that "common questions predominate over any questions affecting individual members," given that "the central question to be decided here is whether Banner and William Penn's implementation of the COI rate increases breach the standardized policy language." 28 F.4th at 522. Here, any possible individualized issues are dwarfed by the common questions concerning whether GLAIC breached the terms of the uniform, standardized contracts at issue. *See Phoenix COI*, 2013 WL 12224042, at *13 (stating

25

that because the "class alleges [a] breach of contract case arising out of standardized insurance policy forms, the common questions of law and fact predominate over any individual questions.").

      b.    <u>A Class Action Is Superior to Other Methods of Adjudication.</u>

The Rule 23(b)(3) superiority test requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In determining whether the class action mechanism is truly superior the court should consider the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class action." *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 425 (E.D. Va. 2016) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 23(b)(e)(A)-(D)).

Applying Rule 23(b)(3) superiority factors to this Action makes clear that the class action mechanism is the superior method of adjudication. No individual actions have been filed against GLAIC concerning the COI increase. And to the extent any Settlement Class Member wishes to pursue their own individual action, they can do so by opting out of the Settlement. *See Thomas*, 312 F.R.D. at 426. Any interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010).

Concentrating Settlement Class Members in this forum is desirable because there are over 14,900 Settlement Class Members who are dispersed throughout the United States. *See id.* There is no practical alternative way to resolve this matter other than through national class adjudication. Potentially thousands of individual suits would unquestionably be costly, unwieldy, and pose a risk of inconsistent rulings. A single nationwide class settlement resolving the Settlement Class's

claims is far more sensible. In addition, many of the Settlement Class Members are individuals who lack the means or incentive to bring an individual suit claiming potentially small individual damages, particularly where, as here, pursuing that suit involves complex questions of actuarial science, accounting, and economic damage. *See Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000). Thus, superiority is satisfied, and the Court should preliminarily certify the Settlement Class for settlement purposes.

C.     <u>Notice to the Settlement Class Should Be Approved.</u>

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, notice is to be provided to a settlement class certified under Rule 23(b)(3), the Court is required to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The "best notice that is practicable" standard applies to both the form and manner of notice. See William R. Rubenstein, 3 Newberg on Class Actions § 8:5 (5th ed.). Here, the proposed form and manner for Notice satisfy these requirements and otherwise conform to the standards of Rule 23(b)(2)(B).

The form of notice here satisfies due process because it informs Settlement Class Members of the terms of the settlement and the options open to them in plain language. *See Newberg* § 11.53 (the form of notice is "adequate if it may be understood by the average class member"). The notice papers, which are attached as Exhibits B and C to the Intrepido-Bowden Declaration, communicate in plain language the essential elements of the Settlement and the options available to Class Members in connection with the Settlement and final approval. *Id.*

The manner of sending notice, which relies on direct mailing to individual Class members

using GLAIC's address database, is the best notice practicable here. Intrepido-Bowden Decl. ¶¶ 27-30. Direct notice will be sent by mail to all Class members using their last known address. *See id.* This is a particularly effective method because in-force policyholders are expected to maintain their current addresses with GLAIC. In cases where the policy is no-longer in force, the last known address is already on file and the administrator will use its own extensive database of addresses to confirm that address on file, to assist in having notices go directly to Class members. A website and toll-free phone number will also be maintained so that anyone can read about the settlement and easily find all documents pertinent to the Settlement. The Settlement Administrator will also research and attempt re-delivery of any Notices returned as undeliverable. *Id.* ¶ 29.

Courts routinely recognize that direct mailings to class members, using known addresses maintained by a defendant or other sources, is the best notice practicable under the circumstances. *See McAdams v. Robinson*, 26 F.4th 149, 157-48 (4th Cir. 2022) (approving a notice method where the administrator "mailed notice to class members for whom it had a physical address" and where the mail notice directed class members to a website and telephone number where class members could access a longform notice). This form and manner of notice has also been approved in other cost of insurance class actions. *See, e.g., Advance Trust & Life Escrow Servs. v. Security Life of Denver Ins. Co.*, Case No. 18-cv-01897-DDD-NYW, ECF No. 148; *Voya COI*, Case No. 16-cv-6399, ECF No. 285; *Leonard v. John Hancock Life Ins. Co.*, Case No. 1:18-cv-4994-AKH, ECF No. 203. The notice plan gives Class members 45 days to opt-out, which is particularly appropriate given that notice will be sent directly to Class members using known addresses. Courts regularly approve opt-out periods of similar or even shorter length. *See, e.g., Jones v. Fidelity Resources, Inc.*, 2020 WL 2112141, at *5 (D. Md. May 4, 2020) (affording class members thirty days from the date of notice to opt out if desired).

D.     **Proposed Schedule**

Plaintiffs propose the following dates for deadlines for the notice plan and for the final

fairness hearing, subject to the approval of the Court:

| Event | Days from Preliminary Approval | Proposed Date/Deadline (if Preliminary Approval Granted May 26, 2022) |
|---|---|---|
| Send notice to Class members | 14 days | June 9, 2022 |
| Deadline to file motion for award of attorneys' fees, expenses, and service awards | 35 days | June 30, 2022 |
| Opt-Out and Objection Deadline | 60 days | July 25, 2022 |
| Deadline to file motion for final approval and reply briefs in support of attorneys' fees, expenses, and service awards | 75 days | August 9, 2022 |
| Final approval hearing | 120 days | September 23, 2022, subject to the Court's availability |

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily

approve the proposed Settlement as within the range of fairness, reasonableness, and adequacy;

(ii) certify the Settlement Class, appoint Plaintiffs as Class representatives and Susman Godfrey

L.L.P. as Class Counsel for Settlement purposes; (iii) approve the proposed form and manner of

notice to the Settlement Class; and (iv) schedule a date and time for a hearing to consider final

approval of the Settlement and related matters.

Dated: May 9, 2022                          Respectfully submitted,

                                            */s/ Kathleen J.L. Holmes*
                                            Ellen D. Marcus (Virginia Bar No. 44314)
                                            Kathleen J.L. Holmes (Virginia Bar No. 35219)
                                            HOLMES COSTIN & MARCUS PLLC
                                            301 N. Fairfax Street, Suite 202
                                            Alexandria, VA 22314
                                            Tel:    703-260-6401

Fax:    703-439-1873
emarcus@hcmlawva.com
kholmes@hcmlawva.com

Steven G. Sklaver (*pro hac vice*)
Lora J. Krsulich (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel:    310-789-3100
Fax:    310-789-3150
ssklaver@susmangodfrey.com
lkrsulich@susmangodfrey.com

Seth Ard (*pro hac vice*)
Ryan Kirkpatrick (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:    212-336-8330
Fax:    212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Jonathan J. Ross (*pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel:    713-653-7813
Fax:    713-654-3399
jross@susmangodfrey.com

*Interim Lead Class Counsel*

Francis J. Balint, Jr. (Virginia Bar No. 21909)
Andrew S. Friedman (*pro hac vice*)
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, PC.
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Tel: 602- 274-110
Fax: 602-274-1199
afriedman@bffb.com
fbalint@bffb.com

*Attorneys for Plaintiff Daubenmier*

30

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 9th day of May 2022, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Kathleen J.L. Holmes*
HOLMES COSTIN & MARCUS PLLC
301 N. Fairfax Street, Suite 202
Alexandria, VA 22314
Tel:     703-260-6401
Fax:     703-439-1873
kholmes@hcmlawva.com

31